UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GAVRIEL SHMUELI,

      Plaintiff,

                                   Case No. 24-cv-12388

v.                                Honorable Linda V. Parker

KRISTI NOEM, [1] Secretary, United
States Department of Homeland
Security, et al.,

      Defendants.

_____/

**OPINION AND ORDER (1) DENYING DEFENDANT'S MOTION TO DISMISS COUNT II OF THE AMENDED COMPLAINT ON BEHALF OF THE SECRETARY OF THE U.S. DEPARTMENT OF HOMELAND SECURITY (ECF NO. 14) AND (2) ORDERING PLAINTIFF TO SHOW CAUSE AS TO WHY ALL DEFENDANTS, EXCEPT THE SECRETARY, SHOULD NOT BE DISMISSED**

On September 11, 2024, Plaintiff Gavriel Shmueli ("Mr. Shmueli") filed this

lawsuit against several United States Transportation Security Administration

("TSA") employees and the Secretary of the United States Department of

---

[1] The Court is sua sponte amending the case caption to identify the current Secretary of the United States Department of Homeland Security. Federal Rule of Civil Procedure 25(d) states that an action against a public official in his or her official capacity does not abate when the official ceases to hold office. (*See* ECF No. 14 at PageID.141 n.1.) "The officer's successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name." Fed. R. Civ. P. 25(d).

Homeland Security, currently Kristi Noem (hereafter "the Secretary") (collectively "Defendants").[2]  On February 5, 2025, Mr. Shmueli filed a two-count Amended Complaint asserting: (I) "*Bivins* -- Violations of First Amendment Freedom of Religion or as an alternative First Amendment Retaliation[,]" and (II) "Religious Discrimination[.]"  (ECF No. 10 (capitalization removed).)  Count I was subsequently dismissed.[3]  (*See* ECF No. 19.)

---

[2] The additional individuals named as Defendants are: TSA Assistant Federal Security Director for Screening Reginald Stephens; TSA Transportation Security Manager Clinton Shrum; TSA Supervisory Program Analyst Constance Balfour; and John Does 1-10.  Mr. Shrum's name is misspelled in Mr. Shmueli's filings.

[3] After Defendants filed a motion to dismiss Count I (ECF No. 13), Mr. Shmueli conceded that the claim "should be dismissed" (ECF No. 18 at PageID.176).  Therefore, the Court granted Defendants' motion.  (ECF No. 19.)  The Court did not terminate any parties at the time, although it appears that all Defendants, except the Secretary, should have been dismissed.

Mr. Shmueli's only remaining claim is brought under Title VII of the Civil Rights Act of 1964.  The statute expressly provides that, in a civil action brought by a federal employee (or former employee), "the head of the department, agency, or unit, as appropriate, *shall* be *the* defendant."  42 U.S.C. § 2000e-16(c) (emphasis added).  "Most courts have construed [§ 2000e-16(c)] to mean that an action can be brought *only* against the head of the department, agency, or unit against which discrimination is alleged."  *Quillen v. U.S. Postal Serv.*, 564 F. Supp. 314, 321 (E.D. Mich. 1983)  (collecting cases); *see also Ballard v. Tenn. Valley Auth.*, 768 F.2d 756, 764 n.23 (6th Cir. 1985) (indicating that the three members of the Tennessee Valley Authority Board of Directors were the "only proper defendants").  Thus, it appears to the Court that the Secretary is the only remaining "proper" Defendant here. Therefore, the Court is ordering Mr. Shmueli to show cause in writing why all Defendants, except the Secretary, should not be dismissed and terminated from this action.

The matter is now before the Court on the Secretary's motion to dismiss Count II of the Amended Complaint.  (ECF No. 14.)  The motion has been fully briefed.  (ECF Nos. 20-21.)  Finding the facts and legal arguments sufficiently set forth in the parties' briefs, the Court dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).  For the reasons set forth below, the Court denies the motion.

## I.      Standard of Review

The Secretary seeks dismissal of Count II pursuant to Federal Rule of Civil Procedure 12(b)(6).  A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).

The plausibility standard "does not impose a probability requirement" at the pleading stage, however; it "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."  *Twombly*,

550 U.S. at 556.  In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  This presumption is not applicable to legal conclusions, however.  *Iqbal*, 556 U.S. at 668.  Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss.  *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)).  Nevertheless, the court "may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## II.     Factual Background

### A.     Mr. Shmueli's Employment

Mr. Shmueli was employed by the United States Department of Homeland Security ("DHS") as a Transportation Security Officer ("TSO") at the Detroit Wayne County Metropolitan Airport ("DTW") from October 2021 through April 2023.  (*See* ECF No. 10 at PageID.44 ¶ 9; *Id.* at PageID.45 ¶ 19.)  Mr. Shmueli is

an Orthodox Jew who observes "Shabbos" ("Sabbath") from Friday evening through sundown on Saturday evening, during which time he is not permitted to work.  (ECF No. 10 at PageID.44 ¶¶ 11-13.)

During Mr. Shmueli's training process to formally become a TSO in October 2021, he informed TSA that he is Jewish and cannot work on the Sabbath. (*See* ECF No. 10 at PageID.44 ¶¶ 12-13; *Id.* at PageID.46 ¶ 21.)  Mr. Shmueli subsequently completed his training and was certified as a TSO on April 25, 2022. (ECF No. 10 at PageID.46 ¶ 23.)

On April 26, 2022, Mr. Shmueli sent an email to TSA's scheduling department requesting, as a religious accommodation, regular days off ( "RDOs") that would allow him to observe the Sabbath.  (*Id.* ¶¶ 24-25.)  As of April 27, 2022, Mr. Shmueli had been on a shift that gave him Fridays and Saturdays as his RDOs. (*Id.* ¶ 26.)  However, his new shift, which was scheduled to begin May 8, 2022, had Tuesdays and Wednesdays as his RDOs.[4]  (*Id.*)  Mr. Shmueli submitted a formal request for a religious accommodation on April 28, 2022.  (ECF No. 10 at PageID.47 ¶ 29.)

---

[4] The Amended Complaint suggests that Mr. Shmueli's RDOs were later adjusted to Wednesdays and Thursdays, although this suggestion is contradicted by other allegations in the pleading.  (Compare ECF No. 10 at PageID.49 ¶ 36 with *id.* at PageID.46-47 ¶¶ 26, 29.)  This discrepancy is not material to the pending motion, however, so the Court assumes his RDOs were Tuesdays and Wednesdays during the relevant time period.

As a TSO, Mr. Shmueli was subject to a collective bargaining agreement (the "CBA").  On May 4, 2022, Defendant Constance Balfour, a TSA Supervisory Program Analyst at DTW, informed Mr. Shmueli that TSA would not be able to accommodate his request to have the Sabbath off, because granting such a request would "be unfair to other employees" and would require TSA to "grant other employees' requests" for the same day off.  (*Id.* ¶ 28.)  Ms. Balfour also told Mr. Shmueli that the terms of the CBA did not require TSA to "honor religious accommodation requests."  (*Id.*)

On May 5, 2022, Ms. Balfour sent a memorandum ("Memo") to Mr. Shmueli in response to his religious accommodation request.  (*Id.* ¶ 29.)  Although the Memo expressly denied Mr. Shmueli's request to have Saturday as one of his RDOs, it stated that TSA would provide him alternative accommodations.  (*Id.* ¶ 30.)  The Memo identified Mr. Shmueli's options as:

> a.  Arrange a schedule trade with an officer that better suits your needs.
>
> b.  Give away/swap your shift using the approved CBA Shift Trade Process.
>
> c.  Request annual leave for Saturday.
>
> d.  Use any compensatory time available.  Compensatory time will be scheduled according to our operational needs.
>
> e.  Request Leave Without Pay (LWOP) for your shift.

6

(ECF No. 10 at PageID.48 ¶ 31(a)-(e).)

The memo informed Mr. Shmueli that he had to request leave or compensatory time using a specific form prior to his scheduled two-week shift being finalized. (*Id.* ¶ 32.) It also stated that if Mr. Shmueli requested annual leave, LWOP, or compensatory time, it would be approved "except in the rare instance that operational needs dictate otherwise" and that he would be notified as soon as possible so that he could make proper arrangements. (*Id.*)

As of May 15, 2022, Mr. Shmueli possessed "'plenty' of compensatory time, annual leave, and time-off awards banked" to allow him to regularly avoid working on the Sabbath. (ECF No. 10 at PageID.50 ¶ 37.) Prior to the incident that gave rise to this lawsuit, Defendant Clinton Shrum, TSA's Transportation Security Manager at DTW, confirmed his awareness that Mr. Shmueli "wanted every Saturday off." (*Id.* ¶ 42.) A first-level TSA supervisor heard Mr. Shrum say that he "would no longer be allowing [Mr. Shmueli] to adjust his schedule to have Saturdays off. (*Id.* ¶ 43.)

On June 15, 2022, a Wednesday, Mr. Shrum called Mr. Shmueli to inform him that he would be required to work the upcoming Saturday, June 18. (ECF No. 10 at PageID.52 ¶ 48.) Mr. Shmueli immediately informed Mr. Shrum that the timing of this notification did not give him enough notice to swap his shift with another TSA worker. (*Id.* ¶ 49.) Mr. Shmueli nevertheless tried to accomplish a

swap shift by arranging to work Thursday, June 16 (one of his RDOs), and sending a "blast email" to all DTW TSOs to see if anyone could work Saturday, June 18. (*Id.*) Mr. Shmueli did not find anyone to cover the shift. (*Id.*)

When Mr. Shmueli asked Mr. Shrum why he had to work on June 18, Mr. Shrum indicated that "not all of the checkpoints in the McNamara . . . terminal were adequately staffed." (*Id.* ¶ 51.) However, Mr. Shmueli had reason to believe his specific checkpoint, "RED 1," was fully staffed as of June 15, 2022. (*Id.*) Specifically, a June 15, 2022 email listed terminal staffing as being significantly higher than the staffing for other checkpoints on that day. (ECF No. 10 at PageID.53 ¶ 52.) Additionally, Mr. Shmueli submitted his request to not work June 18 at least "30 days in advance" and "at least two other employees," who submitted requests for the same day off with less notice, had their requests granted. (ECF No. 10 at PageID.52 ¶ 51.)

In an email on June 17, 2022, Mr. Shrum told Mr. Shmueli that he would not be able to have the following day off work "due to low staffing levels." (ECF No. 10 at PageID.53 ¶ 52.) In the same email, Mr. Shrum warned Mr. Shmueli that his failure to work on June 18 would "result in absence without leave (AWOL) and a letter of counseling." (*Id.*) Mr. Shmueli believed efforts were being made to make his employment "so difficult that he 'would choose to quit rather than endure.'" (*Id.* ¶ 55.)

On Friday, June 17, Mr. Shmueli left work early because he "started feeling unwell as a result of the possibility of losing his employment because he was being treated differently" and "no longer felt welcome."  (ECF No. 10 at PageID.54 ¶¶ 56-57).  Mr. Shmueli then called in sick on June 18.  (*Id.* ¶ 56).  On June 19, Mr. Shrum emailed Mr. Shmueli, accusing him of abusing sick leave and requesting a doctor's note, which Mr. Shmueli subsequently provided.  (*Id.* ¶¶ 58-59).  Nevertheless, Mr. Shmueli never received sick leave for his absence on June 18.  (*Id.* ¶ 62).

### A.  Administrative Proceedings[5]

On July 27, 2022, Mr. Shmueli filed an administrative complaint alleging discrimination and other claims with an Equal Employment Opportunity Counselor.  (ECF No. 10 at PageID.54 ¶ 63.)  On March 29, 2024, the DHS Office of Civil Rights and Civil Liberties ( "CRCL") issued a "Final Agency Decision" on Mr. Shmueli's administrative complaint ( "First CRCL Decision").  (*See* ECF No. 10-1 at PageID.62-94.)  In the First CRCL Decision, DHS determined that TSA

---

[5] The administrative decisions and other documents referenced in this section are attached to the Amended Complaint (*see* ECF Nos. 10-1, 10-2).  Therefore, they may be considered by the Court without converting the motion to one for summary judgment.  *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) ("[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss.").

was liable for religious discrimination against Mr. Shmueli for the circumstances leading up to the incident on June 18, 2022.  (*Id.* at PageID.71-73.)

DHS ordered TSA to: (1) credit Mr. Shmueli back the eight hours of sick leave he used on June 18, 2022; (2) provide four hours of Equal Employment Opportunity Commission ("EEOC") training to the offending TSA management officials; and (3) consider further disciplinary actions against the same offending officials.  (*Id.* at PageID.74-76.)  DHS also granted Mr. Shmueli thirty (30) days to (1) submit evidence and argument in support of any additional claims he wished to make for pecuniary and non-pecuniary damages, and (2) submit a verified statement of costs and an affidavit itemizing his attorneys' fees.  (*Id.* at PageID.74-75.)

Mr. Shmueli was served with the First CRCL Decision via email on April 2, 2024.  (ECF No. 10-1 at PageID.93-94.)  The email included a "Notice of Appeal Rights," advising Mr. Shmueli that he had "the right to appeal [his case] to the [EEOC] or to file a civil action in an appropriate United States District Court."  (*Id.* at PageID.79.)  Mr. Shmueli was further advised that he had to file a civil action within 90 days of receiving "this final decision if [he did] not appeal to EEOC."  (*Id.* at PageID.80.)

Mr. Shmueli submitted documentation to the CRCL concerning his damages, attorney's fees, and costs within the allotted time outlined in the First

CRCL Decision.  (*See* ECF No. 10-2 at PageID.98.)  On June 12, 2024, the CRCL

issued a "Decision on Compensatory Damages and Attorney's Fees" (the "Second

CRCL Decision").  (*See id.* at PageID.96-114.)  In the Second CRCL Decision,

DHS provided that it was "hereby tak[ing] final action" on Mr. Shmueli's request

for damages, attorney's fees, and costs.  (*Id.* at PageID.96.)  It (1) declined to

award any pecuniary or non-pecuniary damages to Mr. Shmueli, and (2) declined

to award any costs or attorneys' fees to him.  (*Id.* at PageID.102-104.)

Mr. Shmueli was served with the Second CRCL Decision via email on June

13, 2024.  (ECF No. 10-2 at PageID.113-114.)  The email included another

"Notice of Appeal Rights" form, which outlined the same appellate rights and

deadlines for pursuing those rights as the form attached to the First CRCL

Decision.  (*Id.* at PageID.105-06.)

## III.    Applicable Law and Analysis[6]

**Whether Mr. Shmueli's Title VII Religious Discrimination Claim is
Time-Barred Under 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407**

The Secretary argues that this action is time-barred under 42 U.S.C.

§ 2000e-16(c) and 29 C.F.R. § 1614.407.  She argues that Mr. Shmueli was

---

[6] In her opening brief, the Secretary raises the issue of whether Mr. Shmueli is
seeking de novo review of the agency's decisions or review under a different
standard.  (*See* ECF No. 14 at PageID.155-58.)  The Secretary contends that de
novo review applies, and Mr. Shmueli does not contest this conclusion in response.
The Court therefore deems the issue forfeited, although even if challenged, it finds

11

required to file this civil action by July 1, 2024—that being, within 90 days of April 2, 2024, when he received the First CRCL Decision—and that he failed to do so.  Mr. Shmueli contends that his deadline to initiate a civil action was not until June 13, 2024, when he was served the Second CRCL Decision.  Thus, he maintains that he had until September 11 to file this civil action, which is the date it was filed.

Which date started the clock turns on which decision constituted the agency's "final action" under the relevant statutes.  The Court concludes that it was the Second CRCL Decision.  Thus, the Court further concludes that Mr. Shmueli's civil action is not time barred.

A federal employee must file a civil action within 90 days of "receipt of notice of final action taken by a[n] . . . agency . . . on a complaint of discrimination."  *See* 42 U.S.C. § 2000e-16(c); *see also* 29 C.F.R. § 1614.407(a).  The regulations provide that "[t]he final decision shall consist of findings by the agency on the merits of each issue in the complaint, or, as appropriate, the rationale for dismissing any claims in the complaint and, when discrimination is found, appropriate remedies and relief in accordance with subpart E of this part."  29

---

that de novo review is the correct standard.  *See, e.g., Scott v. Johanns*, 409 F.3d 466, 472 (D.C. Cir. 2005) (discussing how a civil action following administrative proceedings concluding in the plaintiff's favor, places liability and remedy subject to de novo review); *see also Gryder v. Duffy*, No. 24-5878, 2025 WL 2807058, at *3 (6th Cir. Aug. 5, 2025) (citing multiple Circuit decisions relying on *Scott*).

12

C.F.R. § 1614.407(a).  Thus, although the agency's first decision in Mr. Shmueli's case was titled "Final Agency Decision," its failure to address damages and invitation to Mr. Shmueli to submit additional documentation in support of his entitlement to damages suggests it did not constitute the "final action" for purposes of starting the clock for him to file a civil action.  Sixth Circuit precedent supports this conclusion.

In *Donaldson v. Tennessee Valley Authority*, 759 F.2d 535 (6th Cir. 1985), the Sixth Circuit decided "which of several EEOC final decisions represented 'final action' that would determine each appellant's last opportunity to resort to [the] district court."  *Id.* at 536.  In *Donaldson*, two plaintiffs (Donaldson and Middlebrook) charged their employer, the Tennessee Valley Authority ("TVA"), with sex-based discrimination under Title VII.  *Id.*  After receiving unfavorable decisions from the TVA, the plaintiffs appealed to the EEOC, which affirmed the agency in an "initial 'final decision.'"  The plaintiffs timely moved for reconsideration, but the EEOC denied their requests.  *Id.*

More than 30 days after the EEOC's initial final decision but less than 30 days after it denied their requests for reconsideration, the plaintiffs filed a civil action in district court. [7]  *Id.*  The district court dismissed their civil complaint as

---

[7] At the time, a civil action had to be commenced within 30 days of a final decision.  As indicated, the statute now sets a 90-day time period.

untimely, concluding that the deadline to file a civil action commenced when the EEOC issued the initial final decisions, and not when it denied the plaintiffs' requests for reconsideration. *Id.* The Sixth Circuit reversed, holding that "the EEOC's final decision on each plaintiff's motion to reconsider was its 'final action' for the purposes of 42 U.S.C. § 2000e-16(c)." *Id.*

In reaching this conclusion, the Sixth Circuit paid particular attention to the EEOC's failure in its initial final decision to provide the plaintiffs with clear notice that "the door to district court would close while they were exhausting the administrative remedies available from the EEOC." *Id.* at 537. Instead, the Sixth Circuit found, the initial final decisions invited them "to file for reconsideration with the Commission *or* to file suit in district court," without disclosing that doing so would cause them to "forfeit their last opportunity to resort to district court." *Id.* (emphasis added).

The circumstances here are sufficiently similar to conclude that the Second CRCL Decision constituted the agency's "final action" for purposes of the 90-day deadline to file a civil action. Like the plaintiffs in *Donaldson*, Mr. Shmueli received two separate "final decisions" from the agency investigating his discrimination complaint. The First CRCL Decision gave Mr. Shmueli the option to either participate in further administrative proceedings or file a civil action in district court. It did not warn Mr. Shmueli that participating in additional

14

administrative proceedings without also filing a civil action challenging the

agency's decision would preclude him from later pursuing relief in district court.[8]

Mr. Shmueli accepted the investigating agency's invitation to continue the

administrative proceedings.  Mr. Shmueli then received the agency's Second

CRCL Decision, which informed him that he still had a right within 90 days to

"file a civil action in an appropriate United States District Court."  (*See* ECF No.

10-2 at PageID.105.)  Mr. Shmueli initiated the present action before the 90 days

expired.

This conclusion also is consistent with the "concern[s] for judicial economy"

the Sixth Circuit considered in reaching its holding in *Donaldson*.  As the Sixth

Circuit reasoned, "[c]oncern for judicial economy dictate that we discourage

simultaneous judicial and administrative proceedings that may yield conflicting

results in a single dispute."  759 F.2d at 538.  Such concerns would not be served if

Mr. Shmueli had to pursue a civil action while damages were still being

adjudicated before the agency.

---

[8] Although the First CRCL Decision was titled "Final Agency Decision," the decision itself clearly invited Mr. Shmueli to engage in additional administrative proceedings.  (*See, e.g.*, ECF No. 10-1 at PageID.74-75 ("*Within thirty (30) days of receipt of this Decision, Complainant may submit any additional evidence and argument* in support of Complainant's entitlement to compensatory damages . . . . *CRCL will evaluate Complainant's claim for compensatory damages* and determine an appropriate award within sixty (60) days of receipt of the documentation.  *CRCL's decision will provide Complainant with notice of appeal rights for further review*.") (emphasis added).)

The D.C. Circuit's decision in *Farrar v. Nelson*, 2 F.4th 986 (2021), which the Secretary cites to show that Mr. Shmueli's action is time barred, does not persuade this Court to reach a different conclusion. *Farrar*, in fact, did not even address the issue raised here. Instead, the issue there was whether the plaintiff had to disgorge or offer to disgorge his administrative award if he wished to pursue a civil action based on the same claim. *Id.* at 987.

For these reasons, the Court finds that the Second CRCL Decision was the agency's "final action" for purposes of the 90-day civil action filing deadline. Therefore, the Court holds that Mr. Shmueli's civil action was timely filed.

### A. Whether Mr. Shmueli Sufficiently Pleads a Title VII Religious Discrimination Claim

#### 1. Which Category or Categories of Religious Discrimination are Alleged

The Court begins by identifying the religious discrimination claim(s) Mr. Shmueli asserts in his Amended Complaint. The Secretary interprets the pleading as alleging only a failure-to-accommodate claim, and so she addresses only that claim in her opening brief. (*See* ECF No. 14.) In response, Mr. Shmueli maintains that he has also alleged disparate treatment and retaliation. (*See* ECF No. 20 at PageID.213-15.)

16

Unlike the Secretary, the Court finds that the Amended Complaint states a failure-to-accommodate *and* disparate treatment claim.[9]  The heading of Count II, "Religious Discrimination," is broad enough to encompass both.  (ECF No. 10 at PageID.57 (capitalization removed).)  While it certainly would have been clearer if Mr. Shmueli had asserted separate counts, with defined headings for these different categories of religious discrimination, there are allegations within Count II which "can be plausibly read to put [Defendants] on notice" that both claims are alleged. *Sturgill v. Am. Red. Cross*, 114 F.4th 803, 811 (6th Cir. 2024).  For example, Mr. Shmueli expressly alleges that Defendants failed to accommodate his religious beliefs.  He also alleges that his request to have Saturday as his RDO was denied, when later requests by non-Jewish employees to not work on Saturdays were granted.[10]

On the other hand, the Amended Complaint did not put Defendants on notice that Mr. Shmueli is alleging a Title VII retaliation claim in Count II.  The fact section of the pleading includes allegations relevant to a retaliation claim. However, Mr. Shmueli expressly alleged First Amendment retaliation in Count I—

---

[9] The agency's decision reflects that Mr. Shmueli raised both claims in his administrative complaint.  (*See* ECF No. 10-1.)

[10] The Court addresses *infra* the Secretary's assertion that Mr. Shmueli fails to plead a plausible failure-to-accommodate claim.  As the Secretary has not addressed the plausibility of a disparate treatment claim, the Court does not consider that issue here.

a claim he subsequently agreed should be dismissed. (ECF No. 18 at PageID.176.) Nothing asserted within the body of Count II put Defendants on notice that he also is alleging retaliation under Title VII.

### 2. Whether Mr. Shmueli Plausibly Pleads a Failure-to-Accommodate Claim

The Secretary seeks dismissal of Mr. Shmueli's Title VII religious discrimination claim, arguing that he fails to sufficiently plead that he was "discharged or disciplined" from TSA. (ECF No. 14 at PageID.158-163.) The Secretary argues that such proof is required pursuant to the Sixth Circuit's decision in *DeVore v. University of Kentucky Board of Trustees*, 118 F.4th 839, 845 (6th Cir. 2024), which sets forth the following elements of a plaintiff's prima facie case of discrimination:

> that (1) the employee has "a sincere religious belief that conflicts with an employment requirement;" (2) the employer was on notice "about the conflicts;" and (3) the employee "was discharged or disciplined for failing to comply with the conflicting employment requirement."

*Id.* at 845 (quoting *Tepper v. Potter*, 505 F.3d 508, 513 (6th Cir. 2007)). There are two critical flaws with the Secretary's argument.

First, in *Bilyeu v. UT-Battelle, LLC*, 154 F.4th 396 (2025), the Sixth Circuit held that this "discharge or discipline" requirement "clashes head-on" with the Supreme Court's decision in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024). *Bilyeu*, 154 F.4th at 405. The *Bilyeu* court reached this conclusion while

18

evaluating an employee's discrimination claim based on the failure to accommodate her religion. *Id.* Thus, contrary to the Secretary's assertion in her reply brief (ECF No. 21 at PageID.220-21), the Supreme Court's holding in *Muldrow* does extend beyond sex discrimination claims.

As the Sixth Circuit explained in *Bilyeu*, "Title VII 'requires employers to accommodate the religious practice of their employees unless doing so would impose an undue hardship on the conduct of the employer's business.'" *Id*. at 404 (quoting *Groff v. DeJoy*, 600 U.S. 447, 453-54 (2023)). "In other words, an employer fails to accommodate an employee under Title VII when it forces someone to abandon his religious beliefs to comply with 'otherwise-neutral policies.'" *Id*. (quoting *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015)). Requiring the plaintiff to show an "independent harm," the Sixth Circuit reasoned, is inconsistent with *Muldrow. Id*. at 405. The court held that "under *Muldrow*, a court cannot dismiss a Title VII complaint simply because the plaintiff's only harm is having to choose between violating his religious beliefs and violating workplace policies." *Id*.

Second, even if "discharge or discipline" was a required element of a plaintiff's prima facie case in a religious discrimination claim, it is well established under Supreme Court and Sixth Circuit precedent that "[a] prima facie case is an evidentiary standard, not a pleading requirement" and such an evidentiary standard

19

"may not be transposed into a rigid pleading standard for discrimination cases." *Sturgis v. Am. Red Cross*, 114 F.4th 803, 809 (6th Cir. 2024) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).  As the Sixth Circuit has repeatedly advised, "[a] plaintiff does not have to allege specific facts establishing a prima facie case of discrimination in the[] complaint." *Id*. (quoting *Savel v. MetroHealth Sys.*, 96 F.4th 932, 943-44 (6th Cir. 2024)).  At the motion-to-dismiss stage, the court must decide only whether, upon review of the complaint and any attached exhibits, there is "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

A complaint that is "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" amounting to a prima facie case in order to be deemed sufficient; instead, it must simply allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.  Once again, a claim is said to have facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Mr. Shmueli has met the applicable burden at the motion-to-dismiss stage for his Title VII religious accommodation claim to survive.  In the Amended Complaint, Mr. Shmueli alleges that his sincere religious beliefs preclude him from working on the Sabbath.  (ECF No. 10 at PageID.44

20

¶¶ 11-13.) Mr. Shmueli further alleges that he made his beliefs known to TSA at the start of his employment (*see* ECF No. 10 at PageID.46 ¶ 21), but was required to work on Saturday, June 18, 2022, in potential violation of his known beliefs (ECF No. 10 at PageID.52 ¶ 48). More than a month in advance, Mr. Shmueli asked to not have to work on June 18, but his request was denied, while non-Jewish TSOs received the same day off with less notice. (ECF No. 10 at PageID.59 ¶¶ 97-98.) Despite having knowledge of Mr. Shmueli's sincere religious beliefs, Mr. Shrum threatened Mr. Shmueli with disciplinary action (including an absence without leave and a letter of counseling) if he failed to report for work on the date in question. (ECF No. 10 at PageID.53 ¶ 52.) Then, despite falling ill and expressing his intentions to use sick leave (with a valid doctor's note) to cover the date in question after missing work, Mr. Shmueli was denied sick leave pay. (ECF No. 10 at PageID.59 ¶¶ 99-100.)

The Secretary maintains that Mr. Shmueli's claim still fails because he was offered "reasonable" accommodations, including shift swaps and the ability to use paid and unpaid leave to avoid working on the Sabath. Again, the Secretary's argument looks at the burden-shifting framework for establishing a failure-to-accommodate claim which does not apply when deciding a Rule 12(b)(6) motion. In any event, while Mr. Shmueli alleges

21

that Ms. Balfour granted him "reasonable accommodations" to account for his religious beliefs (*see* ECF No. 10 at PageID.50 ¶ 95), the allegations belie that those accommodations were in fact afforded. The allegations reflect that Mr. Shrum imposed barriers to Mr. Shmueli's use of those accommodations.

For these reasons, the Court denies the Secretary's motion to dismiss Mr. Shmueli's religious discrimination claim on a failure-to-accommodate theory pursuant to Rule 12(b)(6).

## IV. Conclusion

Mr. Shmueli's civil action is appropriately interpreted as a request for de novo review of the agency's decision on liability and damages. The action is not time-barred under 42 U.S.C. § 2000e-16(c) and 29 C.F.R. § 1614.407. Lastly, Mr. Shmueli alleges religious discrimination in violation of Title VII based on disparate treatment and a failure to accommodate, and he sufficiently pleads the latter to survive the Secretary's Rule 12(b)(6) motion.

Accordingly,

**IT IS ORDERED** that Defendants' motion to dismiss Count II against the Secretary (ECF No. 14) is **DENIED**.

**IT IS FURTHER ORDERED** that, **within 14 days**, Mr. Shmueli shall show cause in writing as to why the remaining Defendants (John Does 1-10,

22

Reginald Stephens, Clinton Shrum, and Constance Balfour) should not be

dismissed from this action.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 23, 2026

23